IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALZONTA MAGEE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No. 05-87-GPM-PMF |
| | ) |
| STEPHEN KEIM, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is plaintiff's motion to strike affirmative defenses (Doc. No. 48) and defendants' motion for summary judgment (Doc. No. 45). In this civil rights action, plaintiff challenges the conditions he experienced at Menard Correctional Center in 2003 and 2004. He claims that the defendants violated § 1983 when they failed to accommodate his efforts to practice his religious beliefs in prison by observing religious dietary laws. Specifically, plaintiff alleges that the defendants (1) denied his request to receive a kosher diet, (2) prevented him from consuming unleavened bread during Passover and the Feast of Unleavened Bread (3) forced him to skip three evening meals to avoid celebrating another religious group's holiday. The Amended Complaint has been liberally construed as asserting claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). The motion for summary judgment is opposed (Doc. No. 51, 57).

## Motion to Strike

Plaintiff asks the Court to strike the qualified immunity defense, claiming that the defendants violated long-standing, clearly established Constitutional and statutory rights.

The Court will strike an insufficient defense from a pleading. Fed. R. Civ. P. 12(f). Motions to strike affirmative defenses are generally disfavored and should be granted only when the affirmative defenses are insufficient on the face of the pleading. *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir.1991). It must appear certain that plaintiff will succeed despite any state of the facts which could be proved or inferred in support of the defense. *Id*.

Under many factual circumstances, qualified immunity is a valid affirmative defense to a claim for damages under § 1983. Whether this defense has merit in this case cannot be determined on the pleadings, but must be assessed on the basis of evidence. Plaintiff's motion (Doc. No. 48) should be denied.

## Motion for Summary Judgment

Defendants seek judgment in their favor on plaintiff's First Amendment claim.[1] Defendants Spiller and McAdory argue that plaintiff has insufficient evidence permitting an inference that they were personally involved in a Constitutional deprivation. All defendants argue that this claim could not succeed because plaintiff was offered a diet compatible with his faith, plaintiff failed to properly request inclusion in the Passover Feast of Unleavened Bread, and plaintiff did not actually participate in another faith's religious celebration and suffered no physical injuries from missing a few meals.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The fact presented

---

[1] Because the defendants do not mention the RLUIPA in their motion or their brief, all arguments are evaluated with respect to plaintiff's § 1983 First Amendment claim.

are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998).

One important aspect of plaintiff's religion is to participate in an annual festival known as Passover and the Feast of Unleavened Bread. Early in 2003, plaintiff sent written requests to defendant Keim, seeking permission to receive a special diet for this event, which he intended to celebrate in April. He also spoke with defendant Keim during a religious study class. Defendant Keim made statements leading plaintiff to believe that he had been approved to receive a special meal to celebrate Passover and the Feast of Unleavened Bread. Defendant Keim did not receive plaintiff's requests to participate in the festival and for that reason, he did not add plaintiff's name to the list provided to the prison's dietary department.[2] Plaintiff was unable to properly celebrate this religious festival because he was served meals containing bread that had been leavened with yeast.

On June 13 and July 6, 2003, plaintiff sent written correspondence to defendants McAdory and Spiller, asking for assistance in exchanging information with a grievance officer.

On June 27, 2003, plaintiff sent written correspondence to defendants Spiller and McAdory, complaining about defendant Keim's conduct. In that correspondence, plaintiff explained that he was going forward with a grievance regarding his exclusion from the April, 2003, Passover and the Feast of Unleavened Bread.

Plaintiff's sincere religious beliefs also require him to follow religious doctrine commanding

---

[2] Written requests for a dietary modification for a specific religious holiday must be submitted to the prison chaplain 45 calendar days in advance. 20 Ill. Admin. Code 425.70(d)(1995).

the consumption of clean foods. In particular, plaintiff believes that he may not consume any food containing pork, shellfish, or blood. He believes that the kosher diet offered at the prison should satisfy his religious dietary needs. He prefers the kosher diet over a vegan diet, which would satisfy his religious needs. On several occasions, plaintiff requested a kosher diet.

In August, 2003, defendant Keim placed a conference call with Elder Shaul Hawkins from the home office of the House of Yahweh in Abilene, Texas, an effort to clarify religious doctrine regarding clean food. Defendant Keim formed the impression that a vegan diet was recommended for House of Yahweh members confined with the Illinois Department of Corrections.

In September, 2003, David Heimerman, an Elder associated with the House of Yahweh community in Chilton, Wisconsin, sent correspondence to Dixon Correctional Center, advising Chaplain Larry Jones that a portion of the prison's kosher diet was acceptable but that a portion was unacceptable. Elder Heimerman explained that commercial dairy products were unclean. Elder Heimerman recommended a vegan diet, supplemented with some non-vegan commissary items such as canned tuna, sardines, and canned chicken. Based on information gathered from the House of Yahweh religious leaders, a policy was formulated to approve requests for a vegan diet from inmates following this religion. Defendant Keim denied plaintiff's requests for a kosher diet, believing that a vegan diet would be acceptable and approved, if requested. Plaintiff received a memorandum explaining that the kosher diet contained some commercial dairy products, making it unacceptable for members of his faith. Plaintiff did not request a vegan diet.

On April 13, 2004, Anayah Hawkins, an elder associated with the House of Yahweh community in Abilene, Texas, wrote to Menard Correctional Center, advising defendant Chaplain Keim that inmate members could choose kosher or vegetarian diets as available at each facility. Plaintiff forwarded a copy of Elder Anayah Hawkins' letter to defendant Spiller.

In July, 2004, plaintiff again requested a kosher diet and made another effort to explain that

the consumption of kosher food permitted adherence to the tenets of his faith. After verifying that the policy adopted by the Illinois Department of Corrections was to offer a vegan diet to House of Yahweh members, defendant Chaplain Keim again denied plaintiff's request.

Acting through a designee, defendant Spiller also denied plaintiff's request for a kosher diet. Plaintiff was advised to request a vegan diet. Plaintiff declined to make that request, due to his personal preference for a kosher diet. He anticipates that approval of a kosher diet would permit continued access to non-vegan items sold through the prison commissary.

Another aspect of plaintiff's religion forbids his participation in the traditions or feasts celebrated by other religions. At times, religious events are celebrated by Muslim and Moorish inmates during a normal evening meal. This practice was approved by the defendants. Because plaintiff's religious beliefs prohibit him from taking part in these celebrations, he refused to eat three evening meals: one in December, 2003; one in January, 2004, and one in February, 2004. He suffered no physical injury as a result of the missed meals.

### I.     Personal Involvement

Defendants Spiller and McAdory seek judgment in their favor on plaintiff's § 1983 claim. They believe the evidence would not support a finding that they were personally involved in conduct depriving plaintiff of his religious freedom. Plaintiff contends that these defendants were involved in the events at issue.

Before these defendants may be held liable under §1983, plaintiff must present facts showing that they were personally responsible for a deprivation of plaintiff's freedom to exercise his religious beliefs. *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). To be personally responsible, Spiller and McAdory must "know about the conduct and facilitate it, approve it, condone it, or turn a blind

eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

With respect to defendant Spiller, the materials show that he learned in June, 2003, that plaintiff did not receive an annual religious festival meal in April, 2003. He was subsequently notified that a religious leader held the opinion that inmate followers of the House of Yahweh could choose kosher or vegetarian diets. Several months later, Spiller's designee denied plaintiff's request for a kosher diet. Spiller approved a plan to permit Muslim and Moorish inmates to celebrate some religious feasts during the regular evening meal. Throughout this period, Spiller received correspondence from plaintiff but did not respond to plaintiff's concerns.

With respect to defendant McAdory, the materials permit an inference that he received but did not respond to plaintiff's correspondence and grievances, which raised plaintiff's concerns. He approved a practice allowing Muslim and Moorish inmates to celebrate their religious holidays during the regular evening meal.

Construed in plaintiff's favor, this evidence could not reasonably support an inference that these two defendants were personally involved in (1) the omission of plaintiff's name from the list of inmates approved to receive a special meal to celebrate Passover and the Feast of Unleavened Bread in April, 2003, or (2) decisions denying plaintiff's requests to conform his diet to his religious beliefs by consuming kosher food. Evidence that plaintiff notified these defendants that he was grieving the issue does not establish their personal involvement in the challenged events. However, both Spiller and McAdory were personally involved in the third event: formulating and approving the policy permitting Muslim and Moorish religious festivals during regular evening meals. Because the evidence permits an inference of personal involvement in part of the conduct at issue, these defendants are not entitled to judgment in their favor on plaintiff's First Amendment claim.

## II.     Offer of Vegan Diet

All defendants also seek judgment in their favor on the basis that plaintiff "was offered a diet in compliance with his faith." This argument is supported by facts showing that plaintiff could have requested and received a vegan diet but declined to do so, due to his preference for kosher food.

The Court is not in a position to evaluate this argument because it is not accompanied by a discussion of applicable law. In fact, defendants' entire brief is devoid of any discussion of First Amendment jurisprudence. The defendants are represented by counsel and the Court is not inclined to formulate or flesh out legal arguments on their behalf. This argument is rejected on the basis that it is underdeveloped. *Kelly v. Municipal Courts of Marion County*, 97 F.3d 902, 910 (7th Cir. 1996)(argument deemed waived when plaintiff failed to offer a coherent legal framework for analysis).

## III.    Celebration of Muslim/Moorish Holidays

All defendants also seek judgment in their favor on the basis that plaintiff suffered no physical injury because he chose not to eat meals that he perceived as violating his religious beliefs. The only legal authority tendered in support of this argument is *Morrison v. Martin*, 755 F. Supp. 683, 686 (E.D. N.C. 1990), which applies the legal standard for an Eighth Amendment claim. Because the legal standard for an Eighth Amendment claim is completely inapplicable to plaintiff's First Amendment claim, this argument is also rejected as underdeveloped.

## IV.    Request for Festival Meal

All defendants also seek judgment in their favor on the basis that plaintiff did not submit a request to participate in the Passover Feast of Unleavened Bread in 2003. Viewed in the light most favorable to plaintiff, the evidence shows that plaintiff did ask defendant Keim to include his name

on the list of inmates approved to receive a special meal to commemorate this religious event. Specifically, plaintiff sought permission to receive the meal and obtained reassurance from defendant Keim on that request. In light of the factual dispute, summary judgment is inappropriate.

## V. Qualified Immunity

The defendants also argue that they have qualified immunity from an award of damages. Plaintiff disagrees (Doc. No. 51). In order to resolve this argument, the court first decides whether the conduct violated a right protected by the First Amendment, taking the facts in the light most favorable to plaintiff. If so, the Court considers whether the right was clearly established in the light of the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

It is well established that prisoners have the right to freely exercise their religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348(1987). However, the right to freely exercise religious beliefs does not depend on a person's ability to pursue each and every aspect of a preferred religious practice. Rather, "[a] prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion, and if the prison has sound penological interests supporting the restriction and, if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment". *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir.1996) *citing O'Lone*, 482 U.S. at 352.

A state action violates the Establishment Clause if (1) it does not have a secular purpose; (2) its primary effect is to advance or inhibit religion; or (3) it fosters an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).

Plaintiff contends that defendant Keim is not immune from an award of damages for any injury resulting from his conduct of omitting plaintiff's name from a list of inmates approved to

consume a special meal during Passover and the Feast of Unleavened Bread. He maintains that a jury could find from the evidence that he asked that his name be included and that Keim omitted his name without any valid basis.

For purposes of this motion, the Court will assume that defendant Keim violated the First Amendment when he failed to arrange for plaintiff to receive a special meal for the Passover and Feast of Unleavened Bread. Even so, plaintiff has not identified any case showing that this right was well-established in April, 2003. *See Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir.1993) (recognizing plaintiff's obligation to point out a closely analogous case that established the existence of the right in question). Absent case law clearly establishing a right to receive a special holiday meal on request prior to April, 2003, defendant Keim is immune from an award of damages.

With respect to defendant Keim's conduct of refusing plaintiff's requests for a kosher diet, the Court is not persuaded that these decisions violated the First Amendment. One factor important in the First Amendment analysis is whether other avenues remain available for the exercise of the asserted right. *Turner v. Safley*, 482 U.S. 78, 90 (1987). Plaintiff had reasonable access to a vegan diet and could have satisfied his religious dietary beliefs by consuming vegan meals. That factor weighs heavily in favor of the defense. Furthermore, plaintiff's preference for a kosher diet over a vegan diet has no strong correlation to his sincere religious beliefs. Rather, plaintiff prefers the kosher diet because that choice would preserve the option of buying non-vegan items from the prison commissary. Weighing the relevant factors, Keim's rejection of plaintiff's requests for a kosher diet did not violate plaintiff's First Amendment rights. *See DeHart v. Horn*, 227 F.3d 47, 52-54 (3rd Cir. 2000)(noting importance of these factors in evaluating Buddhist inmate's request for a vegetarian diet).

With respect to the communal meals celebrating Muslim/Moorish holidays, plaintiff maintains that this policy promoted one religion over another in violation of the Establishment Clause. The policy permitting inmate followers of Islamic faiths to celebrate a few religious holidays during regular evening meals does not violate the Establishment Clause. No facts suggest that plaintiff was forced to join the Islamic celebration or that he was punished for failing to participate. While plaintiff skipped three meals in order to avoid the celebrations entirely, that was his choice and not a direct consequence of the policy. In other words, the policy did not create a substantial burden on plaintiff's religious beliefs. *See Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).

In sum, the defendants are entitled to qualified immunity on plaintiff's First Amendment claims.

## Conclusion

IT IS RECOMMENDED that plaintiff's motion to strike affirmative defenses (Doc. No. 48) be DENIED.

IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment (Doc. No. 45) be GRANTED as follows. Defendants Keim, McAdory, and Spiller are immune from an award of damages on plaintiff's First Amendment claim.

If these recommendations are adopted, plaintiff's Religious Land Use and Institutionalized Persons Act (RLUIPA) claim will remain for decision.

SUBMITTED:  **November 21, 2007**  .

                                           *s/Philip M. Frazier*
                                           **PHILIP M. FRAZIER**
                                           **UNITED STATES MAGISTRATE JUDGE**